IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CR-202-5-BO

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| OWEN RENARDO BOWEN ) | |
| ) | |

This matter is before the Court on Defendant's Motion to Dismiss Indictment for Prosecutorial Misconduct. (DE # 179). The Motion is DENIED.

## STATEMENT OF THE CASE

On July 9, 2009, a federal grand jury sitting in the Eastern District of North Carolina returned a true bill of indictment against Defendant, charging him with conspiracy to possess with intent to distribute and to distribute more than fifty (50) grams of cocaine base ("crack") and more than five hundred (500) grams of cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Section 846 and possession with intent to distribute more than fifty grams of cocaine base ("crack") and a quantity of cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841 (a) (1).

On October 21, 2010, H. P. Williams, Jr. was appointed to represent the Defendant. On February 25, 2011, the Defendant filed the instant motion. Trial is set for March 7, 2011.

## FACTS

The following facts are uncontested: On March 14, 2009, co-defendant William Howard Pierce sold crack cocaine to a confidential informant, who was acting under the direction of the Raleigh Police Department (RPD). Pierce was observed coming from 3201-E Calumet Drive in

Raleigh, North Carolina prior to selling the crack, and then returning to 3201-E immediately after the transaction. Based upon this transaction, RPD Detective E. J. Gibney searched 3201-E pursuant to a warrant.

When police entered the apartment, Defendant and Louis Rivera immediately ran into the bathroom. Immediately afterward, officers were able to recover over 100 grams of crack cocaine from the bathroom toilet.

Elsewhere in the apartment, officers found cocaine, additional crack cocaine, marijuana, various items of drug paraphernalia, and approximately $18,000 in United States currency.

Officers arrested Defendant and Rivera. Rivera subsequently gave a Mirandized statement regarding the activity in the apartment, and the roles of the individuals present. Rivera stated Defendant was "the errand person who runs errands for the dealers, buys food that sort of thing. He is part of the crew."

On July 9, 2009, the case against Defendant was presented to a federal grand jury. RPD Detective Kyle Patchin appeared as the witness for the government. The following is the portion of the grand jury testimony related to Owen Bowen, including the questions asked by Special Assistant United States Attorney Rebecca Holt:

> HOLT: "Did you also encounter an individual named Owen Bowen inside Apartment E of 3201 Calumet Drive?"
>
> PATCHIN: "Yes. Our team did encounter Mr. Bowen. He ran into the bathroom with Luis Rivera and he attempted to flush down the toilet, crack cocaine wrapped in plastic. The plastic was later printed - - which was pulled out - - and his fingerprints came back on the packaging, which was - - which surrounding the cocaine. And that amount of cocaine found floating was sixty-one point three (61.3) grams. Then the officers – you know, it's common for us to run into the problem where they run into the bathroom and flush it. And with experienced officers, we were able to take the toilet apart and they found sixty-nine point three (69.3) grams of crack cocaine like in, you know, the commode and also a bag of marijuana weighing approximately eight point – eight grams."

> HOLT: "So, in the bathroom, what you were able to locate is a plastic bag that contained some sixty – over sixty grams of crack cocaine; and then once you took the toilet apart, there was an additional sixty nine grams of crack cocaine, as well as the marijuana?"
>
> PATCHIN: "That is correct."
>
> HOLT: "And the fingerprints that were recovered that were later matched to Owen Bowen were from the plastic bag that was actually floating in the top of the toilet?"
>
> PATCHIN: "That is correct."

Discovery in this case, which the Government has provided to Defendant's counsel, shows that there were no identifiable fingerprints found on the bags of crack cocaine.

After signing a plea agreement, Rivera was interviewed by RPD Det. Gibney and Officer Mendez on September 11, 2009. The Government states that during this interview, "Rivera gave much greater detail as to the defendant's specific involvement in the drug trafficking occurring at 3501 Calumet Drive than he had included in his Mirandized statement upon his arrest on March 14, 2009. Particularly, Rivera outlined how Bowen would help in the distribution of cocaine from the apartment." Gov.'s Response at 4. The Defendant states that Rivera's testimony "changed drastically" since his Mirandized statements. Def.'s Mot. to Dismiss at 4.

Following the interview, Det. Gibney sent his typewritten report of Rivera's debriefing to SAUSA Holt as an email attachment on September 16, 2009. The accompanying email message from Det. Gibney stated "please let me know if u want any changes made . . I am stuck at home all week with my sick son so if my cell doesn't work, please don't hesitate to call me @ home. Thanx Eric"

In the instant motion, Defendant claims that SAUSA Holt conspired with Det. Kyle Patchin for him to commit perjury during the grand jury proceedings, and that Det. Gibney and SAUSA Holt also conspired to "doctor or fix" Rivera's testimony. Id. at 3-4. Defendant thus argues that his indictment should be dismissed.

3

## DISCUSSION

Defendant's Motion is denied. Defendant fails to show prosecutorial misconduct. Additionally, the accurate portions of Det. Patchin's testimony was sufficient to establish probable cause to indict the Defendant.

### No Prosecutorial Misconduct

There is no evidence that SAUSA Holt and Det. Patchin colluded to present perjured testimony to the grand jury or otherwise intentionally misled the grand jury. The Government has provided Defendant case discovery that showed that no fingerprints were actually found on the cocaine bags, and has made no attempt to hide this information. Defendant has not shown that Det. Patchin's grand jury testimony was the result of anything other than a mistake.

Additionally, Defendant's inferences regarding Rivera's testimony and Det. Gibney's email are without merit. The fact that a cooperating witness provided additional information regarding the Defendant during his debriefing does not show that officers "fixed" the interview. Id. at 4. There are many reasons why the information may have changed, including the fact that Rivera may have initially wanted to protect the Defendant upon arrest. Moreover, there is nothing unusual or nefarious about an officer consulting a prosecutor regarding a debriefing report.

Thus, Defendant has failed to show prosecutorial misconduct.

### Probable Cause

The Court also finds that the accurate portions of Det. Patchin's testimony was sufficient to establish probable cause to indict the Defendant.

Where "a grand jury irregularity isn't of constitutional dimension, prejudice justifying dismissal of an indictment exists only where (1) the irregularity substantially influences the

decision to indict or (2) 'there is grave doubt that the decision to indict was free from the substantial influence of such [irregularities].'" United States v. Brewer, 1 F.3d 1430, 1433 (4th Cir. 1993)(declining to dismiss grand jury indictment because of officer's mistaken testimony).

Det. Patchin accurately testified that after police arrived, Defendant and Rivera ran to the bathroom. Moments later, police found crack cocaine clogging the toilet. Det. Patchin then stated that based upon his training and experience, it is common for people to run into the bathroom and flush illegal narcotics. This is sufficient evidence for a jury to find probable cause to indict. Thus, the Defendant has failed to show that the erroneous fingerprint testimony substantially influenced the grand jury's decision. No "grave doubt" exists regarding this issue. Accordingly, the Defendant has failed to show the necessary prejudice justifying the indictment's dismissal.

The Defendant's motion cites to United States v. Bagley to argue that this Court should dismiss Defendant's indictment if there was a "reasonable likelihood" that that erroneous testimony affected the grand jury. (473 U.S. 667, 678 (1985). Bagley, however, only applies to the knowing use of perjured trial testimony or the knowing failure to disclose that false testimony convicted a defendant. As stated above, the Defendant has not shown that Det. Patchin committed perjury. There has also been no failure to disclose the incorrect testimony, as it has been disclosed for several months through discovery. Thus, the Bagley standard is inapplicable here.

## CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss the Indictment.

SO ORDERED, this 3 day of March, 2011.

                                                TERRENCE W. BOYLE  
                                                UNITED STATES DISTRICT JUDGE